**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| W. Eric Hulstedt, et al., | No. CV-09-1258-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| City of Scottsdale, Arizona, et. al., | |
| Defendants. | |

Pending before this Court are Plaintiffs' Motion to Seal Document (Doc. 207) and Motion to Amend the Liability Scheduling Order and Plaintiff's Motion to File A Second Amended Complaint (Doc. 209). For the reasons set forth in this Order, the Court grants the Motion to Seal Document (Doc. 207) and denies the Motion to Amend the Liability Scheduling Order and Plaintiff's Motion to File A Second Amended Complaint (Doc. 209).

The Court entered its Case Management Order on March 2, 2010. The Order required that any amendments to the Complaint be filed by May 1, 2010. No such amendments were filed, nor did any party seek an extension in the deadlines. The order further specified that "The Deadlines Are Real: **The Court fully intends to enforce the deadlines in the Case Management Order. . . . The parties should plan their litigation activities accordingly."**

Almost two months after the deadline to amend the pleadings, Defendants filed their Motion for Judgment on the Pleadings. Plaintiff's responded and the motion was fully briefed on July 16, 2010. The Court ruled on the motion on March 15, 2011. During the

intervening seven months between the motion's being fully briefed and the Court's ruling both parties were fully advised as to the position of the other party with respect to the adequacy or lack thereof of the Plaintiff's claims in the counts dismissed by the Court. Plaintiffs took three depositions in July 2010, four in August, eight in September, two in November, and two in January. At no time after any of these depositions did the Plaintiffs seek to amend their First Amended Complaint based on the discovery of information that, despite their diligence they could not have earlier discovered.

On May 13, 2011, more than a year after the deadline for amending the Complaint, two months after the Court's ruling on the Motion on the Pleadings and thirteen days prior to the extended discovery deadline in this matter, Plaintiff filed this motion seeking to amend the scheduling order, so that it could file a second amended complaint. Although the proposed amendments are extensive, the Plaintiffs, in their motion, assert that they seek to file the second amended complaint in light of the Court's ruling on Defendants Motion for Judgment on the Pleadings issued on March 15, 2011 in which the Court dismissed counts three through six and part of count seven of the Complaint. The proposed amendment seeks, in part, to add facts in an attempt to salvage the claims dismissed in the Court's order.

Nevertheless, the Court finds that Plaintiffs were not diligent in seeking to amend the First Amended Complaint. Therefore, it will not amend its Scheduling Order.

The Ninth Circuit has set forth, at some length, the legal standard that governs a party's motion to amend a scheduling order to permit an additional amendment to the complaint. Before permitting the scheduling order to be amended the moving party must establish "good cause" justifying the request for an extension.

> 'A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15.' . . . Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.
>
> . . .

> Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

### 1. Count Three (False Arrest)

In granting the Defendant's Motion on the false arrest claim, Judge Murguia ruled that "the facts in Plaintiff's Complaint make clear that there was probable cause for David Hulstedt's arrest" for the crimes of kidnaping and child abuse, because the Plaintiff knowingly restrained his child "as a shield or hostage," in violation of A.R.S. § 13-1304(A)(1) (kidnaping), or because he had "under circumstances likely to produce death or serious physical injury . . . permit[ted] a child . . . to be placed in a situation where the person or health of the child . . . is endangered." A.R.S. § 13-3623(A) (child abuse).

The Complaint acknowledges that during the two hour standoff during which the Scottsdale Police Department surrounded his home, officers were informed that David had threatened to "pile drive" his child into the ground if his brother Eric was not allowed to enter the home and speak to him. As Judge Murguia's order apparently determines, this threat of harm to his child, when attempting to negotiate with police who have created a barricade situation and isolated the Plaintiff is, in and of itself, sufficient to give the police probable cause to believe that he was using his child as a "shield or hostage." It is thus sufficient to provide probable cause to believe that he had engaged in the crime of kidnaping, under the definition of what constitutes probable cause as set forth by Judge Murguia in her order.

Plaintiffs seek to amend their complaint to add factual allegations suggesting that, due to the encirclement of the home and the suppression of his ability to speak with his family, David was under arrest at 13:05 in the afternoon – presumably before any alleged statements were made by David about pile-driving his daughter–thus, presumably depriving the officers of probable cause to arrest David on kidnaping charges.

Nevertheless, Plaintiffs have been aware since before they initiated this lawsuit that

- 3 -

their home was encircled by police at 1:05. They have not sought to amend their complaint to assert this new theory about the time of David Hulstedt's arrest until well after the Court ruled against the sufficiency of their complaint, and until the discovery deadline was imminent. Plaintiffs were not diligent in seeking to amend their complaint in this respect. Therefore, their amendment will not be permitted.

Judge Murguia in her Order goes on to note that when the David Hulstedt left the house he carried his napping baby on his right shoulder, that the police could have construed the unresponsive baby as having been injured as a result of David's reported threat to "pile drive" his child, and that the police thus had probable cause to believe that the Plaintiff had committed child abuse.

Plaintiffs seeks to amend their complaint to add factual allegations, apparently derived from the depositions of Officer's Smith, and Garcia, and perhaps also the depositions of Greene, Fellows and Dorer, that David Hulstedt's child actually opened her eyes after David brought her out of the home. They specifically note in their motion that officers Smith, Garcia and Dorer testified that they noticed Hulstedt's child open her eyes after David brought her out. This apparently attempts to correct the position asserted by Plaintiffs in their First Amended Complaint and their response to the Defendant's Motion For Judgment on the Pleadings, in which they asserted that Hulstedt's child was napping on his shoulder when he emerged from the home. Doc. 76 at p. 10.

Plaintiff also apparently seeks to assert that the fact that police officers noted that the child's eyes were open would prevent any other officer from reasonably forming the belief that Hulstedt had harmed his child prior to his emergence from the home. The Court need not decide the question, because Plaintiff were not diligent in seeking to amend their complaint. They personally became aware of the fact that Officers Smith and Garcia saw Hulstedt's child open her eyes no later than September when they took the depositions of Officers Smith and Garcia. They were already well past the deadline to seek to amend their complaint, but they nevertheless did not seek to timely amend their complaint, or correct the assertions made in their Response to Defendant's Motion For Judgment on the Pleading until

eight months later, after the Court had ruled on the motion and discovery was virtually complete. This does not constitute the required diligence. The scheduling order therefore will not be revised to permit the filing of the second amended complaint in these respects.

**2. Count Four, Five ((Loss of Family, Society and Companionship) and Six (Fourteenth Amendment Substantive Due Process Violation).**

Judge Murguia further dismissed counts three through six because of her determination that the "shocks the conscious" standard necessary to state a claim for these causes of action was not met, as a matter of law, by the allegations of deliberate indifference that were alleged as to the defendants. This was principally so, because the situation required immediate action by the law enforcement officers and did not permit reflection   In such situations, Judge Murguia ruled, Plaintiffs needed to allege and plead facts that would demonstrate "a purpose to cause harm unrelated to the legitimate object of arrest." Because Plaintiffs had failed to make such allegations, Judge Murguia dismissed these counts of their complaint.

In their Response to the Defendant's Motion to Dismiss, Plaintiffs demonstrate their awareness of the different standards that apply to the "shock the conscience" test including both the "deliberate indifference" test and the "purpose to harm" test that could alternately apply depending upon whether the police officers had time to deliberate before acting. Doc. 76 at pps.10-11. As is demonstrated by their Response, Plaintiffs knowingly asserted that the deliberate indifference standard applied, and the "purpose to harm" test was inapplicable. Plaintiffs made no attempt to amend their complaint to assert facts that demonstrated that the officers had a "purpose to harm" the plaintiffs. They now seek to amend their First Amended Complaint both to make such allegations, and to challenge the determination that the officer's needed to make an instant judgment about how to respond when David began returning to the home.

But, Plaintiffs have been aware since at least the time that Defendants filed their motion that Defendants have asserted that the "deliberate indifference" set forth in these claims was insufficient to state a claim with respect to them in light of the facts presented

1  which required them to act immediately. *County of Sacramento v. Lewis,* 523 U.S. 833, 836 (1998). They offer no sufficient reason consistent with diligence on their part why they failed to make such allegations until this point in the litigation.

Further, although they attempt to add a number of factual allegations relating to Officers Dorer and Slavin they do not offer sufficient factual allegations to make plausible their assertion that Officers Dorer and Slavin acted with the purpose to cause harm unrelated to the arrest. *Ashcroft v. Iqbal,* 550 U.S. 544, 570 (2007), *Bell Atl. Corp. V. Twombly,* ____U.S.____, 129 S.Ct. 1937, 1948-49 (2009).

Finally their dispute with Judge Murguia's determination that the instant judgment standard applies, is not affected by the additional factual allegations they seek to newly allege. And at any rate, they offer no justification for asserting these facts more than two months after Judge Murguia's ruling, and more than a year after the deadline for amending pleadings.

### 3. Count Seven (Pre-shooting Fourth Amendment Violation)

In her order dismissing count seven as it related to the pre-shooting occupation of the Hulstedt's garage only, Judge Murguia ruled that, based on the facts alleged, the "emergency aid exception" permitted the officers to enter the home prior to the shooting. The doctrine permits police to enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.

The proposed second amended complaint attempts to assert facts from the deposition of Officer Hertko that would suggest that despite the earlier communications received by officers that suggested a need to protect David's child from imminent injury, Officer Hertko had time to assess the situation for himself and determine that no such protective action was needed or justified. Such assertions are not new, however. They constituted part of the argument made by Plaintiffs in their Response to the Defendants Motion for Judgment On the Pleadings. Doc. 76 at 12-13. To the extent that the proposed amendment seeks to add facts from material taken from Officer Hertko's deposition, the additional assertions do not provide a sufficient basis to reconsider Judge Murguia's determination that the officers acted

reasonably and within the scope of the emergency aid exception by taking the actions they did in light of the facts as had been reported to them and as are acknowledged in the First Amended Complaint. *United States v. Snipe,* 515 F.3d 947, 952 (9th Cir. 2008). At any rate, the Plaintiffs took Officer Hertko's deposition on August 19, 2010. Yet they made no attempt to amend the complaint, or supplement their Response to Defendant's Motion with the additional facts that they now claim are relevant.

In addition. seeking to file a second amended complaint at the end of discovery is prejudicial to the Defendants in that it deprives them of the opportunity to develop discovery in response to such of Plaintiffs theories as are new. And while Plaintiffs' proposed additions to the Second Amended Complaint are extensive, Plaintiffs offer no reason why such assertions could not have been earlier made.

**IT IS THEREFORE ORDERED:**

1. Granting the Motion to Seal Document (Doc. 207) and directing the Clerk of the Court to file under seal the lodged Proposed Plaintiffs' Motion to Amend (Doc. 209) .

2. Denying the Motion to Amend the Liability Scheduling Order and Plaintiff's Motion to File A Second Amended Complaint (Doc. 209).

3. Denying the Motion to Seal Exhibits C and D (Doc. 237) as moot.

4. Denying the Motion to Withdraw (274) as moot.

5. Denying the Stipulation to Order Permitting the Filing of a Redacted Version of Plaintiffs' Proposed Second Amended Complaint as an Exhibit to Their Motion to Amend the Liability Scheduling Order and to File a Second Amended Complaint (Doc. 208) as moot

6. Granting the Stipulation to File Non-Paper Exhibits (Doc. 251).

DATED this 6th day of July, 2011.

G. Murray Snow
United States District Judge