**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| W. Eric Hulstedt, permanent guardian and permanent conservator of David Hulstedt, an adult; Richard M. Gerry, as guardian ad litem for D.H., a minor; Walter Hulstedt and Janice Hulstedt,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Scottsdale, Arizona; et al.<br><br>Defendants. | No. CV-09-1258-PHX-GMS<br><br>**ORDER** |

This case arises on Defendants' Motion to Clarify the Courts' Previous Orders Regarding Richard Gerry's Role as Guardian Ad Litem for D.H.[1] (Doc. 236) Defendants request that this Court "clarify Mr. Gerry's role as *guardian ad litem*[,]" that he "is neither a party in this action nor the 'client' of D.H.'s purported counsel," and "he [should] be free to communicate with the City outside the presence of Plaintiffs' counsel." (*Id*. at 2) Plaintiffs responded, doc. 247, and Defendants replied, doc. 253. While an interesting issue

---

[1] The child's initials, rather than her full name, are used herein by counsel and the court to protect the minor's privacy and security concerns pursuant to Rule 5.2(a)(3), Fed.R.Civ.P., adopted in compliance with section 205(c)(3) of the E-Government Act of 2002. Rule 5.2(a)(3) (provides that references to "the name of an individual known to be a minor . . . may include only . . . the minor's initials."). See, Advisory Committee Notes (2007).

of first impression in the Ninth Circuit, the Court concludes that Defendants request a prohibited advisory opinion which a district court lacks jurisdiction to render under Article III of the Constitution. The Court will deny Defendants' Motion. How the minor's *guardian ad litem* chooses to communicate with Plaintiffs, Defendants, their counsel and representatives in representing the minor's best interests lies within the *guardian ad litem's* wide discretion.

**I. Background**

This § 1983 and related-tort action arises from a November 7, 2008 police shooting in Scottsdale, Arizona of Plaintiff David Hulstedt ("Hulstedt"), a paranoid schizophrenic, shortly after he exited his residence, carrying his 23-month old daughter, Plaintiff D.H. (Docs. 37 at 2-5; 247 at 4) Most of the facts surrounding the shooting are hotly contested, from Hulstedt's initial 911 call and abrupt hang up, the dispatcher's request that Scottsdale police conduct a welfare check at the residence, the escalation of the circumstances to a barricade situation with the presence of dozens of Scottsdale officers, including police negotiators with the establishment of a command post, the reason Hulstedt was holding his daughter, to the shooting itself.

Briefly stated, Defendants contend that sometime before the shooting, Hulstedt threatened to "pile drive" his minor daughter, D.H., unless certain conditions were met by the police. (*Id.* at 4) After a brief standoff, Hulstedt, who was unarmed, was convinced by a police negotiator to exit the residence. A short distance outside the residence, while carrying D.H., either raised over his head due to police commands to "Put up your hands!" or laying over his shoulder, Hulstedt decided to turn around, intending to return and re-enter the residence, when Scottsdale Officers James Dorer and Richard Slavin, purportedly fearing for D.H.'s life, fired four shots, almost simultaneously, striking Hulstedt with three of them. (*Id.* at 3-5) Shot by an AR-15 rifle, Hulstedt and D.H. fell to the ground. (*Id.* at 3-5, doc. 247 at 5) Plaintiffs contend Hulstedt was immediately rendered a T-10 paraplegic and D.H. suffered a fractured skull when her head hit river rock adjacent to the concrete front walkway. (*Id.* at 3)

On March 1, 2011, the formerly assigned District Judge, ordered that "an independent person" be appointed as *guardian ad litem* for D.H. in this case. (Doc. 178 at 6-7) The selection and appointment of a *guardian ad litem* was referred to the undersigned Magistrate Judge pursuant to Fed.R.Civ.P. 72, LRCiv 72.1, and 28 U.S.C.§ 636(b). (*Id.* at 7)

On March 28, 2011, Richard Gerry, Esq. was appointed as D.H.'s *guardian ad litem.* (Doc. 183) The Court's order spelled out that

> [a]lthough he is not D.H.'s attorney of record in this lawsuit, absent further court order, Mr. Gerry, as an officer of the District Court, shall enjoy all powers, privileges and immunities to determine, direct, and act upon D.H.'s bests interests as they may relate, directly or indirectly, to this litigation except as expressly stated herein.

(*Id.* at 3) (citations omitted). The only express limitation imposed on the *guardian ad litem's* authority is that D.H.'s claim in this lawsuit may not be settled, compromised, or voluntarily dismissed, absent an order of the district court upon a finding that such request is in D.H.'s best interests. (*Id.*) D.H.'s immediate family members and all counsel were directed to "cooperate with Mr. Gerry in his capacity as D.H.'s *guardian ad litem* if ethical and appropriate to do so." (*Id.* at 4-5) The March 28, 2011 appointment order specified Mr. Gerry's powers and authority as D.H.'s *guardian ad litem* to include, but are not limited to,

> whether to discharge or retain D.H.'s current counsel of record; to employ different, conflict free counsel to represent D.H. on a contingency fee and advancement-of-costs basis only; to determine whether claims or causes of action, which have not been alleged, should be alleged on D.H.'s behalf against any current party or non-party; and to decide if it is in D.H.'s best interests to remain a party in this lawsuit or move for her voluntary dismissal from this action.

(*Id.* at 3)

Defendants' multi-part Motion alleges a wild claim, denied by adverse counsel, that "Plaintiffs' counsel have taken the extraordinary position that Mr. Gerry, the court-appointed *guardian ad litem*, is not an independent officer of the Court, but, rather, a party to the action." (Doc. 236 at 1) Defendants' Reply, however, exposes the crux of their complaints. First, Defendants desire "the ability to engage in candid and unhindered

discussions with Mr. Gerry about the continued course of this litigation, including how Mr. Gerry intends to use his broad authority to resolve or change this litigation, and without being required to have those discussions filtered Plaintiffs' counsel first." (Doc. 253 at 5) They claim to be "completely in the dark as to how Mr. Gerry plans to proceed with [his] authority." (*Id.* at 3) Defendants make clear that "[t]he City may, at some point in this litigation, determine that it wants to settle solely with D.H. Should the City make such a determination, it should be free to provide such an offer directly to Mr. Gerry without being hindered by Plaintiffs' counsel, who, for obvious reasons, would reject such a settlement out of hand." (*Id.*) Secondly, Defendants repeat their long-held view of the ethical "impropriety of D.H.'s representation in this matter [which] should be of grave concern to this court, to Mr. Gerry and to counsel for Plaintiffs." (*Id.*) Candidly, defense counsel is so passionate about this issue they are seemingly baiting the Court to take *sua sponte* action to remove D.H.'s counsel and are overlooking the possibility that retention of her current counsel may be in D.H.'s bests interests yet they themselves have taken no action on this ethical claim in the two years this lawsuit has been pending.

        Conversely, Plaintiffs' counsel indicate that the March 28, 2011 appointment order is "already clear" that "the GAL is required to maintain objectivity and independence." (Doc. 247 at 2) Plaintiffs' counsel acknowledge "that Plaintiffs' attorneys do not control the GAL. Plaintiffs have not sequestered the GAL as argued by defendants. If the GAL desires to have direct communication with any of defendants' attorneys[,] he is free to do so." (*Id.* at 2, 8) Nevertheless, Plaintiffs' counsel have adopted the legal view that "plaintiffs' counsel must be permitted to have privileged communications with the GAL[]" and frame the issue as "whether defendants' attorneys may ethically communicate directly with the GAL [outside the presence of Plaintiffs' counsel]." (*Id.* at 2, 9) Responding to Defendants repeated claim in this lawsuit that Plaintiffs' counsel have an impermissible, unethical conflict in jointly representing D.H.'s and Hulstedt's interests in this action, and "[a]ssuming that these comments are offered in good faith," Plaintiffs' counsel point out the obligation of "all members of the bar . . . to report perceived violations of the Rules of Professional Conduct.

- 4 -

See also, Robert J. Corcoran, *In re Himmel: Am I My Brother's Keeper?*, Ariz. Att'y. Oct 1989." (*Id.* at 8) To date, Plaintiffs' counsel are "unaware of any ethical complaints filed against any of plaintiffs' attorneys by any person, attorney or judicial officer." (*Id.*) Of course, "[d]isqualification is an extreme sanction and should only be ordered 'after careful consideration of the client's rights to be represented by the counsel of her choice, and the nature and extent of the ethics violation.'" *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, * 6 (D.Ariz., Nov. 5, 2009) (quoting *Palmer v. Pioneer Hotel & Casino*, 19 F.Supp.2d 1157, 1162 (D.Nev. 1998), *reversed on other grounds*, *Palmer v. Pioneer Inn Associates, Ltd.*, 338 F.3d 981 (9th Cir. 2003); *Kaiser v. AT&T*, 2002 WL 1362054, * 5 (D.Ariz., April 5, 2002).

Plaintiffs' counsel concede they were unable to find any Arizona or Ninth Circuit case law specifically stating that a GAL's communications with his ward's attorneys enjoy the protection of the attorney-client privilege and, in some jurisdictions, such communications are not protected by the privilege, citing *Ross v. Gadwah*, 554 A.2d 1284, 1286 (N.H. 1988) (following state law in a child custody dispute, "none of the information the guardian gathers can be shielded from discovery by the attorney-client privilege."). (*Id.* at 12-13) Plaintiffs' counsel, however, advance several arguments why a ward's attorneys' communications with the ward's GAL should enjoy the protection of the privilege and "oppose any request by defendants that seeks an order grant them leave to have unsolicited, ex parte, contact with the GAL." (*Id.* at 13-15)

## II. The Attorney-Client Privilege

The public has a right to every person's testimony, except where precluded by a constitutional, common-law, or statutory privilege. *Trammel v. United States*, 445 U.S. 40, 50 (1980); *United States v. Bryan*, 339 U.S. 323, 331 (1950). If a district court maintains federal question jurisdiction or, as here, both federal question and state law claims are at issue, the federal common law of privilege applies to all claims. Rule 501, Federal Rules of

Evidence[2]; *Wilkins v. Maricopa County*, 2010 WL 2231909, * 3 (D.Ariz., June 2, 2010); Vincent S. Walkowiak, *The Attorney-Client Privilege in Civil Litigation: Protecting and Defending Confidentiality*, Chapter 22 at p. 607 (4th ed. 2008). Thus, citations to state cases or federal diversity cases in this case are not controlling. Moreover, because the privilege is in derogation of the search for the truth, it is construed narrowly. *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citation omitted); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). "The party asserting the [attorney-client] privilege bears the burden of proving each essential element." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009); *United States v. The Corporation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

"The prerequisites necessary to the creation of the attorney-client privilege are: (1) legal advice must be sought, (2) from a professional legal advisor in his or her legal capacity, (3) the communications must relate to that legal advice, (4) they must be made in confidence, (5) by the client or the attorney, (6) the privilege is asserted by the client, (7) from disclosure by the client or the attorney, and (8) the protection must not be waived. *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 555 (D.Ariz. 2011) (citing *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Upjohn Co. v. United States*, 449 U.S. 383, 392–93 (1981) ("Confidential communications from the attorney back to the client, in the form of advice, are also protected."). "Five elements are common to all definitions of the attorney-client privilege: (1) an attorney, (2) a client, (3) a communication, (4) confidentiality anticipated and preserved, and (5) legal advice or assistance being the

---

[2] Federal Rule of Evidence 501 provides, in relevant part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. . . .

Rule 501, Fed.R.Evid.

purpose of the communication." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 795-800 (E.D.La. 2007) (in-depth discussion of the attorney-client privilege).

**III. Advisory Opinions**

The judicial power of federal courts is limited to "cases" or "controversies." U.S. Const., Art. III, sec. 2. "[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "To that end, the Supreme Court has developed justiciability doctrines - such as ripeness, standing, mootness, and a prohibition on advisory opinions - that prohibit federal courts from entertaining and deciding questions where no case or controversy exists." *Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos*, 675 F.Supp.2d 629, 635 (E.D.Va. 2009) (footnote omitted). "Importantly, these doctrines preserve the constitutionally mandated separation of powers, conserve judicial resources, improve judicial decisionmaking by requiring concrete controversies, and promote fairness by generally prohibiting the adjudication of the rights of parties not before a court." *Id*. (footnote omitted). "Because of this constitutional limitation, federal jurisdiction may not be invoked simply because two litigants have differing views of the law." *Westlands Water Dist. v. Nat. Resources Defense Council*, 276 F.Supp.2d 1046, 1050 (E.D.Cal. 2003). Thus, a federal court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *Associated Oregon Industries v. Avakian*, 2010 WL 1838661, * 2 (D.Or., May 6, 2010).

Article III's case and controversy requirement has given rise to the threshold requirements of standing and ripeness. *Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002) ("Because standing and ripeness are threshold requirements, without which neither the district court nor this court has jurisdiction, we address these issues first."). "[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court

action." *Wolfson v. Brammer*, 2007 WL 2288024, * 3 (D.Ariz., Aug. 8, 2007) (quoting Chemerinsky, *Federal Jurisdiction*, 113 (2003) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). Accordingly, "[f]ederal courts are not authorized to render advice to persons contemplating . . . acts." *MacCaulay v. U.S. Foodservice, Inc.*, 152 F.Supp.2d 1229, 1230 (D.Nev. 2001) (citing *Muskrat v. United States*, 219 U.S. 346 (1911); *United States v. Fruehauf*, 365 U.S. 146, 157 (1961); and *Jones v. Griffith, M.D.*, 870 F.2d 1363, 1366 (7th Cir. 1989)).

In *MacCaulay,* for example, the district court held that the parties' stipulation and request for a ruling whether an employer needs to withhold payroll taxes on a back and front wage award in a settlement was a request for a prohibited advisory opinion. Thus, the district judge concluded that he lacked jurisdiction to grant the parties' request. 152 F.Supp.2d at 1231.

**IV. Discussion**

Neither Plaintiffs' counsel nor the GAL has filed a motion for protective order pursuant to Rule 26(c), Fed.R.Civ.P., because Defendants seek to depose the GAL. *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403, 1412 (S.D.Cal. 1994) ("In certain circumstances, a protective order is the appropriate remedy to cure the unauthorized disclosure of privileged communications.") (citing *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 919 (9th Cir. 1987)). Indeed, Defendants concede that "discovery in this case is closed. The City has no desire to reopen discovery by attempting to depose Mr. Gerry or to propound discovery requests or subpoenas to him." (Doc. 253 at 4) Defendants recognize that "the propriety of [obtaining from a GAL] is dubious [but are] unaware of any rule or case that would permit [Defendants] to propound discovery to an independent and objective officer of the court whose sole task is to protect the interests of a minor." (*Id.*) See, *Fong Sik Leung v. Dulles*, 226 F.2d 74 (9th Cir. 1955) (holding that *guardian ad litem* is not a party to an action, and therefore not subject to physical examination under Fed.R.Civ.P. 35), reaffirmed by the Ninth Circuit in *Scharf v. United States*, 597 F.2d 1240, 1243 (9th Cir. 1979). Whether the attorney-client privilege applies to an attorney's communications with

a minor's *guardian ad litem* may be disputed between the parties but in the context of this case at this time, it does not constitute a "controversy" within the meaning of Article III of the Constitution. As such, the Court does not have jurisdiction to render an advisory opinion.

**V. Conclusion**

The parties may not properly invoke the District Court's jurisdiction to render an advisory opinion simply because they "have differing views of the law" on whether the attorney-client privilege applies to an attorney's communications with D.H.'s *guardian ad litem*. *Westlands Water Dist.*, 276 F.Supp.2d at 1050. The Court's March 28, 2011 order is sufficiently adequate to guide the parties, their counsel, and the GAL in their communications with the GAL.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Clarify the Courts' Previous Orders Regarding Richard Gerry's Role as Guardian Ad Litem for D.H., doc. 236, is **DENIED** as a request for the Court to issue a prohibited advisory opinion.

On the Court's own motion,

**IT IS FURTHER ORDERED** that D.H.'s *guardian ad litem* shall prepare and file **under seal** on or before **Friday, August 12, 2011**, a Status Report, setting forth his findings, opinions, and recommendations regarding settlement, representation by D.H.'s current counsel, continued involvement as a party in this case, and any other issue in this case regarding the minor's bests interests and the reasons for them.

Dated this 18th day of July, 2011.

Lawrence O. Anderson
United States Magistrate Judge